IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BILLY RUSSELL LAND,            )
                               )
          Plaintiff,           )
                               )
                               )       1:19cv1084
     v.                        )
                               )
JUDGE BURKE, et al.,           )
                               )
          Defendants.          )

**MEMORANDUM OPINION, ORDER, AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

This case comes before the Court on Plaintiff's Application to Proceed In Forma Pauperis (the "Application")(Docket Entry 1) filed in conjunction with his pro se Complaint (Docket Entry 2). For the reasons that follow, the Court will grant Plaintiff's instant Application for the limited purpose of recommending dismissal of this action under 28 U.S.C. § 1915(e)(2)(B) for failing to state a claim and as barred by various immunity doctrines.

**LEGAL STANDARD**

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." Nasim v. Warden, Md. House of Corr., 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [is] not without its

problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." Nagy v. FMC Butner, 376 F.3d 252, 255 (4th Cir. 2004).  To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines . . . the action . . .(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

As to the first of these grounds, a plaintiff "fails to state a claim on which relief may be granted," 28 U.S.C. § 1915(e)(2)(B)(ii), when the complaint does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (emphasis added) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" Id. (quoting Twombly, 550 U.S. at 557).  This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id.  In other words, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the

elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.[1]

Another ground for dismissal under 28 U.S.C. § 1915(e)(2)(B) applies in situations where doctrines established by the United States Constitution or at common law immunize government entities and/or government personnel from liability for damages. See, e.g., Pennhurst State Sch. & Hosp. v. Halderman, 465 U.S. 89 (1984) (discussing eleventh-amendment immunity of states and state officials); Pierson v. Ray, 386 U.S. 547 (1967) (describing interrelationship between 42 U.S.C. § 1983 and common-law immunity doctrines, such as judicial, legislative, and prosecutorial immunity); cf. Allen v. Burke, 690 F.2d 376, 379 (4th Cir. 1982) (noting that, even where "damages are theoretically available under [certain] statutes . . ., in some cases, immunity doctrines and special defenses, available only to public officials, preclude or

---

[1] Although "[a] document filed *pro se* is to be liberally construed and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers," Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citation and internal quotation marks omitted), the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (dismissing pro se complaint); accord Atherton v. District of Columbia Office of Mayor, 567 F.3d 672, 681-82 (D.C. Cir. 2009) ("A *pro se* complaint . . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a *pro se* complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (first quoting Erickson, 551 U.S. at 94; then quoting Iqbal, 556 U.S. at 679)).

-3-

severely limit the damage remedy" (internal quotation marks omitted)).

## **INTRODUCTION**

Asserting jurisdiction pursuant to "42 U.S.C. § 1983," for violation of his "Right to Travel, First Amendment, Fourth Amendment, [Fifth] Amendment, [and Eighth] Amendment [constitutional rights]" (Docket Entry 2 at 3),[2] Plaintiff initiated this action against four defendants, in both their individual and official capacities: (1) "John Doe Burke" ("Judge Burke"), (2) "Brittany Puckett" ("ADA Puckett"), (3) "Jim O'Neill" ("DA O'Neill"), and (4) "J.D. Stidham" ("Officer Stidham") (id. at 1-3). The Complaint states as its basis for claims under Section 1983 that, by "enforcing General Statute 20-111(2) and G.S. 20-309[,] Defendants are depriving [Plaintiff of] the right to travel, and threats[ and] fines are assessed. The Defendants have sentence[d Plaintiff] for contempt of court." (Id. at 4.) In support, the Complaint's "Statement of Claim" alleges:

> This matter came about on 11/4/2018 when Officer [] Stidham of the Winston-Salem Police Department initiated a traffic stop for expired registration and [lack of] liability insurance.
>
> [] Plaintiff . . . stated to Officer [] Stidham that [Plaintiff] was travel[]ing in his personal automobile, not driving a commercial vehicle. [] Plaintiff [ ] explained to Officer [] Stidham that he was in violation

---

[2] For legibility reasons, this Memorandum Opinion omits varying-sized font in all quotations of Plaintiff's materials.

-4-

>     of the United States Constitution by issuing [Plaintiff] two citations for something protected by federal law and the U.S. Constitution.
>
>     . . . .
>
>     During the week of 9/23/19 thr[ough] 9/26/19[, ADA Puckett] informed [] Plaintiff [ ] through telephone that his court date was on 9/26/19 at 9:00 in Courtroom 5B . . . . [ADA] Puckett [later] informed [Plaintiff] by phone that the court proceedings w[ere] rescheduled to 1300 h[ours].
>
>     [] Plaintiff [ ] arrived at the Forsyth County Courthouse at 1310 h[ours] for a scheduled evidentiary hearing.
>
>     . . . Judge Burke [] presid[ed] over the hearing on both 9/23/19 and 9/26/19.
>
>     During the evidentiary hearing, . . . Judge Burke offered [] Plaintiff [ ] a plea bargain . . . . The plea bargain [required ] Plaintiff [ to] plead guilty to a non-moving violation.
>
>     [] Plaintiff [ ] informed Judge Burke that he had a right to travel in his automobile[] and the plea bargain was denied.
>
>     Immediately after [Plaintiff's] refusal to take [the] plea bargain[,] . . . Judge Burke directed sheriff deputies to arrest [] Plaintiff [ ] for failure to appear in court on 9/26/19, even though [] Plaintiff [ ] was present in court . . . . Bond was set at one-thousand dollars secured.

(Id. at 7-8 (quotation marks omitted).)

Finally, the Complaint asserts that Plaintiff "has and is experiencing mental and emotional pain" and requests "[a] violation fee of [Plaintiff's] liberty [in the amount of] $250,000 per incident or per 15 minutes or any part thereof." (Id. at 5.) The Complaint also requests "actual damages [in the amount of] $800,000

[or] $250,000 [for] each defendant," and "punitive damages [in the amount of] $1,000,000 [ because] Defendants acted with malice, deception[,] and abuse of power."  (Id. (parenthesis removed).)

## **DISCUSSION**

As an initial matter, to state a claim for relief under Section 1983, Plaintiff must allege factual matter showing "that [he was] deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law."  American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999).[3]  Moreover, Plaintiff must raise his Section 1983 claims "against a 'person'" capable of committing a violation of his constitutional rights.  Conley v. Ryan, 92 F. Supp. 3d 502, 519 (S.D. W. Va. 2015) (quoting 42 U.S.C. § 1983).  As "Congress did not exercise its power to abrogate a state's Eleventh Amendment immunity when it enacted 42 U.S.C. § 1983," Coffin v. South Carolina Dep't of Soc. Servs., 562 F. Supp.

---

[3] Specifically, Section 1983 provides, in pertinent part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

42 U.S.C. § 1983 (emphasis added).

-6-

579, 585 (D.S.C. 1983), "a State is not a person within the meaning of § 1983," Will v. Michigan Dep't of State Police, 491 U.S. 58, 64 (1989).

## I. Judge Burke

First, the Complaint alleges that Judge Burke presided, as a judge, over Plaintiff's criminal matter. (See Docket Entry 2 at 7-8.) In this regard, "[j]udges performing judicial acts within their jurisdiction are entitled to absolute immunity from civil liability claims," In re Mills, 287 F. App'x. 273, 279 (4th Cir. 2008) (emphasis added), "even if such acts were allegedly done either maliciously or corruptly," King v. Myers, 973 F.2d 354, 356 (4th Cir. 1992) (citing Pierson v. Ray, 386 U.S. 547, 554 (1967)). See also Mireles v. Waco, 502 U.S. 9, 11 (1991) (stating that "judicial immunity is an immunity from suit, not just from ultimate assessment of damages"). To determine whether an action constitutes a "judicial act" protected by judicial immunity, the Court must consider "whether the function is one normally performed by a judge, and whether the parties dealt with the judge in his or her judicial capacity." King, 973 F.2d at 357. Thus, a plaintiff can overcome the judicial immunity bar only if the judge's "actions were non-judicial or the actions were judicial but were taken without jurisdiction." Evans v. Downey, No. 1:15-CV-117, 2016 WL 3562102, at *2 (W.D. Ky. June 24, 2016) (unpublished) (citing Mireles, 502 U.S. at 13).

-7-

Here, the Complaint does not allege that Judge Burke lacked jurisdiction over Plaintiff's case. (See Docket Entry 2 at 7-8.) Further, the actions Plaintiff challenges - conducting hearings, issuing orders, setting bond amounts, and the like - all qualify as judicial. See King, 973 F.2d at 357. In addition, even though Plaintiff alleges that Judge Burke deprived Plaintiff of his constitutional rights, judicial immunity still applies. See id. at 356 (ruling that judicial immunity attaches even where a judge's actions qualify as malicious or corrupt); see also Mikhail v. Kahn, 991 F. Supp. 2d 596, 660 (E.D. Pa. 2014) (holding that "[j]udges are absolutely immune from suit" for money damages arising from their judicial acts, even if such acts took "place *ex parte* and without notice or a hearing" (internal quotation marks omitted)). Accordingly, Judge Burke enjoys absolute judicial immunity from Plaintiff's damages claims.

Also, any official capacity claim for damages against Judge Burke fails as a matter of law because the State of North Carolina employs him, see N.C. Gen. Stat. §§ 7A-3 (bringing all court operations under control of state), 7A-41 (establishing superior courts and providing for superior court judges), 7A-130 (establishing district courts), 7A-132 (providing for district court judges). "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is

-8-

Case 1:19-cv-01084-WO-LPA   Document 4   Filed 06/30/20   Page 8 of 14

a suit against the official's office," Will, 491 U.S. at 70, and "a State is not a person within the meaning of § 1983," id. at 64.

## II. DA O'Neill and ADA Puckett

Next, the Complaint includes DA O'Neill in the caption and in its list of defendants, but fails to include any factual allegations against him. (Compare Docket Entry 2 at 1, 3, with id. at 1-8.) "Simply listing a name in a caption, or as a defendant, is not sufficient to state a claim." Key v. South Carolina, Civ. Action No. 1:11-1613, 2011 WL 3846848, at *2 (D.S.C. Aug. 10, 2011) (unpublished). The Complaint appears to pursue a claim against DA O'Neill solely based on his position of authority, however, theories of respondeat superior or liability predicated solely on a defendant's identity as a supervisor do not exist under Section 1983. See Iqbal, 556 U.S. at 677. "Instead, a successful individual capacity claim must allege that the defendant was personally involved in the deprivation of [Plaintiff]'s rights." Bunting v. Cooper, Civ. Action No. 5:17-CT-3098, 2017 WL 5639948, at *3 (E.D.N.C. May 23, 2017) (unpublished) (internal quotation marks and citation omitted) (citing Iqbal, 556 U.S. at 676, and Monell v. Dept. of Soc. Servs., 436 U.S. 658, 691-92 (1978)). The Complaint lacks any such allegations against DA O'Neill.

Turning to the individual capacity claim asserted against ADA Puckett, the Supreme Court has held that "absolute immunity appl[ies] with full force" to a prosecutor's activities that remain

-9-

"intimately associated with the judicial phase of the criminal process." Imbler v. Pachtman, 424 U.S. 409, 430 (1976); see also Polidi v. Bannon, 226 F. Supp. 3d 615, 620-21 (E.D. Va. Dec. 28, 2016) ("Prosecutors are absolutely immune from suits for money damages for conduct in or connected with judicial proceedings."). The Complaint seeks damages from a state court prosecutor and, further, fails to offer any factual allegations that would suggest that ADA Puckett acted outside of the judicial phase of the criminal prosecution. (See Docket Entry 2 at 7-8.) To the contrary, the Complaint alleges only that ADA Puckett "informed [] Plaintiff [ ] through telephone that his court date was on 9/26/19 at 9:00" and later that it was "rescheduled to 1300 h[ou]rs." (Id. at 7.) As a result, the Court should dismiss any Section 1983 claims against ADA Puckett in her individual capacity based on prosecutorial immunity.

Additionally, the Complaint purports to assert an official capacity Section 1983 claim for damages against DA O'Neill and ADA Puckett (see Docket Entry 2 at 2-3), but such claim fails as a matter of law, because "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office," Will, 491 U.S. at 71, and "a State is not a person within the meaning of [Section] 1983," id. at 64. In North Carolina, district attorneys and their assistants act as arms of the State. See N.C. Gen. Stat. §§ 7A-60 (creating

prosecutorial districts and position of district attorney), 7A-61 (empowering district attorneys to "prosecute in a timely manner in the name of the State all criminal actions"), 7A-63 (providing for assistant district attorneys to aid district attorney), 7A-65 (establishing compensation for district attorneys and assistant district attorneys). As a result, any official capacity damages claim under Section 1983 against DA O'Neill and ADA Puckett suffers from an obvious fatal defect, as "neither a State nor its officials acting in their official capacities are 'persons' under [Section] 1983," Will, 491 U.S. at 71.

### III. Officer Stidham

Lastly, as to Officer Stidham, the Complaint alleges that he "initiated a traffic stop [on the Plaintiff] for expired registration and [lack of] liability insurance." (Docket Entry 2 at 7.) According to the Complaint, Plaintiff thereafter "stated to Officer [] Stidham that he was travel[]ing in his personal automobile," and that, as a result, "Officer [] Stidham [ ] was in violation of the United States Constitution." (Id.) As previously referenced, the Complaint alleges that "Defendants are depriving [Plaintiff] of [his] right to travel." (Id. at 4.)

Police officers possess immunity from Section 1983 liability for money damages as long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457

-11-

U.S. 800, 818 (1982). "Qualified immunity protects officers who commit constitutional violations, but who, in light of clearly established law, could reasonably believe that their actions were lawful." Henry v. Purnell, 652 F.3d 524, 531 (4th Cir. 2011). "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." Hope v. Pelzer, 536 U.S. 730, 739 (2002) (internal quotation marks omitted). Absent a constitutional violation, the qualified immunity analysis "ends right then and there." Abney v. Coe, 493 F.3d 412, 415 (4th Cir. 2007).

In this case, even liberally construed, the Complaint's assertion that Officer Stidham "depriv[ed Plaintiff of] the right to travel" (Docket Entry 2 at 4), by "initiat[ing] a traffic stop for expired registration and [lack of] liability insurance" (id. at 7), does not plausibly establish that Officer Stidham unlawfully deprived Plaintiff of his constitutional rights. "The constitutional right to travel is not a right to travel in any manner, without regulation, and does not provide travelers a right to ignore state traffic laws. Therefore, it cannot serve as a reason why [an officer] would not be entitled to qualified immunity." Byndon v. Pugh, 350 F. Supp. 3d 495, 510 (N.D. W. Va. Oct. 4, 2018) (internal citation omitted).

-12-

Plaintiff's official capacity claim against Officer Stidham, which constitutes a claim "against the governmental entity employing [him]," Nivens v. Gilchrist, 444 F.3d 237, 249 (4th Cir. 2006), i.e., the Winston-Salem Police Department, falls short for an additional reason. Specifically, "claims against officers in their official capacities are claims against the entities for which the officers were acting . . . . [T]o establish liability on behalf of the entity, it must be shown that the actions of the officers were unconstitutional and were taken pursuant to a custom or policy of the entity." Giancola v. State of W. Va. Dep't of Pub. Safety, 830 F.2d 547, 550 (4th Cir. 1987). The Complaint alleges injury from the actions of Officer Stidham, but does not set out any factual allegations showing that those actions resulted from any official policy or custom of the Winston-Salem Police Department (see Docket Entry 2 at 1-8), and, as such, any official capacity claim fails as a matter of law, see Mitchell v. Rountree, No. 1:16CV1352, 2018 WL 3626432, at *4 (M.D.N.C. July 30, 2018) (unpublished) (recommending dismissal of Section 1983 official capacity claims against Winston-Salem police officers for the plaintiff's failure to "identify a municipal policy or custom that caused his injury").

In sum, the Complaint's Section 1983 individual and official capacity claims against Officer Stidham cannot proceed.

## CONCLUSION

The Court should dismiss the Complaint under Section 1915(e)(2)(B) for failing to state a claim and as barred by various immunity doctrines.

**IT IS THEREFORE ORDERED** that Plaintiff's Application for Leave to Proceed In Forma Pauperis (Docket Entry 1) is **GRANTED FOR THE LIMITED PURPOSE OF ALLOWING THE COURT TO CONSIDER A RECOMMENDATION OF DISMISSAL.**

**IT IS RECOMMENDED** that this action be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B).

/s/ L. Patrick Auld
**L. Patrick Auld
United States Magistrate Judge**

June 30, 2020